UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SISER NORTH AMERICA, INC.,

Plaintiff,

v.

KIRK ANTON and HEAT TRANSFER WAREHOUSE, INC.,

Defendants.
______________________________ /

Case No. 4:26-cv-10602

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 23)**

## I. PROCEDURAL HISTORY

This case was filed by Plaintiff Siser North America, Inc., on February 20, 2026. ECF No. 1. Defendants Heat Transfer Warehouse, Inc., and its corporate officer Kirk Anton appeared and filed a motion to dismiss. ECF No. 3. The court reminded Plaintiff of its opportunity to amend its complaint, which Plaintiff did. ECF No. 7. Plaintiff also filed a motion for immediate delivery of Plaintiff's alleged collateral pending final judgment. ECF No. 8. Defendants responded (ECF No. 11) and filed another motion to dismiss (ECF No. 10). The court held a hearing on the motion for immediate delivery on April 9, 2026, and explained at

the hearing its concerns that Plaintiff had failed to show any security interest or title in the goods it sought to secure pending final judgment. And for those reasons, the court denied that motion. ECF No. 16. And in that posture, the court offered one final opportunity to amend. ECF No. 15. Plaintiff took the court up on that offer and filed a second amended complaint. (ECF No. 18). Defendant filed its third motion to dismiss (ECF No. 23), which is now before the court. The motion is fully briefed (ECF Nos. 26, 31), and oral argument was held on August 19, 2026, at which counsel for all parties appeared.

For the reasons explained below, the court **GRANTS** the motion **IN PART** and dismisses Counts II, III, IV, and VII against both Defendants, but retains counts V and VI for negligent and innocent misrepresentation against both Defendants.

## II. FACTUAL BACKGROUND

Siser is a leading international manufacturer, distributor, and direct supplier of Heat Transfer Vinyl ("HTV") and Pressure Sensitive Vinyl ("Easy®PSV") intended for customer decorating soft and hard

goods. ECF No. 18, PageID.598.[1] Heat Transfer is a distributor of permanent adhesive vinyl, iron on heat transfer vinyl, and a variety of apparel decoration materials. Siser and Defendants had a business arrangement under which Heat Transfer ordered products from Siser, Siser shipped products to Heat Transfer, Heat Transfer accepted those products, and in return Defendants would pay for the products delivered. *Id.* All parties agreed that this was a series of contracts that were composed of purchase orders and invoices; each purchase order and invoice constituted a separate contract. All parties agree that these contracts were for the sale of goods and are governed by the UCC. Siser alleges that "despite accepting the product from Siser . . . Defendants have failed and refused to pay[.]" *Id.* at PageID.599.

Beginning in or around 2024 and continuing through 2025, Heat Transfer's outstanding balance to Siser increased significantly. According to Plaintiff, "Defendants did not object to the billing information and the account invoices at the time the information and invoices were provided nor any reasonable time thereafter." *Id.*

---

[1] On a motion to dismiss, the court takes the well-pleaded allegations in the complaint as stated and accepts them as true. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Following communications regarding the rapidly-increasing and significant outstanding balance, Siser asserts that on April 11, 2025, Defendants made representations "conveying that Heat Transfer had sufficient ongoing liquidity and operational viability to support continued shipments on credit." *Id.*

Siser alleges this was false. They say that at the time of the April 11, 2025 email (and unknown to Siser), Heat Transfer was experiencing severe financial distress, lacked the ability to sustain the claimed weekly payment structure, and was considering winding down its operations. Defendants knew, or recklessly disregarded, these facts and failed to disclose them, despite understanding that Siser was relying on their statements in deciding whether to continue extending credit. ECF No. 18, PageID.600. Siser continued to extend credit to Heat Transfer for approximately three months following the April 11, 2025 communication. During that period, Siser supplied approximately $500,000 in product to Heat Transfer that it alleges it would not have shipped absent Defendants' misrepresentations. *Id.*

Plaintiff alleges that between 2024 and July 2025, Defendants failed to pay $3,160,823.89. Since then, Heat Transfer appears to have

closed its business and sold off its remaining inventory, but with no payment to Siser. ECF No. 18, PageID.602-03. This lawsuit followed.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the nonmoving party and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at

527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555.

## IV. ANALYSIS

By Defendants' terms, this motion to dismiss is not an attempt to dismiss this case in full, but instead to pare down the complaint to its true substance: a breach of contract/account stated claim (Count I). *See* ECF No. 23, PageID.868. In total, this is a seven count Complaint, for account stated (Count I), unjust enrichment (Count II), promissory estoppel (Count III), conversion (Count IV), innocent misrepresentation (Count V), negligent misrepresentation (Count VI), and declaratory judgment – alter ego/piercing the corporate veil (VII).

### A. Quasi-Contract Claims

Courts routinely hold that quasi-contract claims cannot lie where an express contract covers the same subject matter. *See Scholz v. Montgomery Ward & Co, Inc.*, 437 Mich. 83, 93 (1991) (explaining that "[a]n implied contract cannot be enforced where the parties have made an express contract covering the same subject matter"); *Zwiker v. Lake Superior State Univ.*, 340 Mich. App. 448, 482-483 (2022) (holding that the plaintiffs' implied-contract theory failed because the express written agreements between the parties governed the same subject matter as the equitable claims). On this basis, Defendants move to dismiss the claims for unjust enrichment and promissory estoppel (Counts II and III). ECF No. 23, PageID.881. Plaintiff responds that the federal rules permit alternative pleading. ECF No. 26, PageID.920-21.

Plaintiff ignores, however, that "a party may only plead an unjust enrichment claim and a breach of contract claim in the alternative 'when there is some question of whether a contract actually existed.'" *Functional Hiit Fitness, LLC v. F45 Training Inc.*, No. 22-10168, 2023 U.S. Dist. LEXIS 174284, at *49 (E.D. Mich. Sep. 28, 2023) (quoting *Elia Companies, LLC v. Univ. of Michigan Regents*, 335 Mich. App. 439,

452 (2021), *rev'd on other grounds*, 511 Mich. 66 (2023) (citing *Keywell & Rosenfeld v. Bithell*, 294 Mich. App. 300, 327-28 (2002))). "In other words, a plaintiff may only plead in the alternative if either party contests the enforceability or existence of the underlying contract or contracts. Where, as here, both parties have conceded and relied on the enforceability of the contracts, alternative pleading is not permitted." *See id.*; ECF No. 31, PageID.971 (Defendants: "neither party contests that there was an agreement between Siser and Heat Transfer").

Plaintiff tries to get around this conclusion by saying that, because Heat Transfer "dispute[s the] terms, scope, and effect" of the contract between them (ECF No. 31, PageID.971), Siser is "entitled to plead alternative equitable theories in the event the Court later determines some aspect of the parties' dealings, representations, retained proceeds, or postdelivery conduct is not fully governed by an enforceable contract." ECF No. 26, PageID.921. But that theory is not consistent with the well-established legal rule. *See Campbell v. Troy*, 42 Mich. App. 534, 537 (1972) ("There cannot be an express and implied contract covering the same subject matter at the same time."); *Tenn.*

*Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 497 (6th Cir. 1985) ("It is well established that a court cannot add an implied contract term that is inconsistent with an express contract."). If a court were to permit a party to recover under an implied theory where an express contract governs the subject matter, it "would in effect be adding a provision to the contract that would obligate" a party to perform or pay where such an obligation was not agreed to by the parties. *Tenn. Valley Auth.*, 753 F.2d at 497. If it turns out that the parties' uncontested contract, or the gap-filling provisions of the UCC, do not provide a remedy for some of Defendants' alleged conduct, Michigan law is clear that a quasi-contract theory cannot read-in clauses the parties did not agree to.

On this ground, the motion must be granted as to Counts II and III.

**B. Tort Claims (Counts IV-VI)**

Defendants next seek to dismiss Plaintiff's conversion and misrepresentation claims under the economic loss doctrine. The economic loss doctrine holds that "parties to a transaction for goods are precluded recovery in tort for economic loss" where "their economic

expectations can be satisfied by contractual remedies." *See Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 380 (2002). "The doctrine is animated by the idea that tort remedies should not bail out parties who could have anticipated losses caused by failed performance and negotiated an appropriate response." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014).

Courts have recognized an "exception to the economic loss doctrine for a select group of intentional torts." *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 370 (1995) (citing, for example, defamation, fraud in the inducement, tortious interference with prospective economic advantage). Plaintiff has not shown why an exception would apply to his conversion claim, but the court concludes that his misrepresentation claims are sufficiently pleaded to proceed to discovery.

**i. Conversion**

Plaintiff's conversion claims must be dismissed. While "tort claims are barred under the doctrine only where the duty alleged to have been violated by the defendant is implicated by the relevant contract[,]" the duty alleged in Plaintiff's conversion claims is the same

as that implicated by the contract between the parties: to pay the money due Siser by the terms of the contract for the goods Siser delivered to Heat Transfer. *See Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 582 (6th Cir. 2016); *e.g. 1-800 Bathtub, LLC v. Rebath, LLC*, No. 357932, 2024 Mich. App. LEXIS 3003, at *25, *24 n.8 (Ct. App. Apr. 18, 2024) (applying the doctrine to statutory conversion and collecting cases where courts found "no duty separate and distinct from the contractual obligation" in conversion claims); *see also Powers Paper, LLC v. Northstar Sourcing LLC*, No. 24-10731, 2025 LX 495108, at *6 n.1 (E.D. Mich. Oct. 16, 2025) (denying default judgment on conversion claim where plaintiff also brought breach of contract claim because "the sale of goods is a consensual transfer of property that does not meet the definition of conversion under Michigan law."). Contrary to Plaintiff's argument, title to the goods at issue passed upon delivery; Plaintiff presents no other terms that would negate that base assumption under the UCC. *See* Mich. Comp. Laws § 440.2401(b). Plaintiff cannot assert a property interest in those goods; its interest is limited to its rights under the contract, which is in the money Plaintiff is owed.

Plaintiff's arguments to the contrary do not change this conclusion. Plaintiff largely focuses on the fact that their allegations are sufficient to satisfy the elements of a conversion claim. But that is insufficient to overcome the economic loss doctrine, because that doctrine does not depend on whether a plaintiff has independently satisfied each element of the relevant tort. The doctrine simply applies and bars the tort claim if a contract covers the same subject matter. Plaintiff cites *DBI Invs., LLC v. Blavin,* 617 F. App'x 374, 381 (6th Cir. 2015), for the proposition that "the existence of a contract does not bar a conversion claim where a defendant subsequently exercises wrongful dominion over identifiable property independent of contractual nonperformance." ECF No. 26, PageID.916. That case, however, says nothing of the sort[2] – and that being the sole case Plaintiff marshals in support of its argument that the doctrine should not apply to its conversion claims, Plaintiff has provided no reason to think the doctrine

[2] That case acknowledged that "[c]laims of fraud 'extraneous to the contract' are permissible, whereas 'fraud interwoven with the breach of contract' cannot support an independent claim." *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 382 (6th Cir. 2015) (citing *Huron Tool*, 532 N.W.2d at 545). But it ultimately found that the plaintiff's allegations of fraud were "essentially claims of nonperformance of the relevant contract provisions" and that the plaintiff failed to "allege any statements" "that 'tricked' it into entering the contract." *Id.*

should not apply. Further, Plaintiff does not engage with the cases that hold that "a consensual transfer" of goods, like the one here, "does not meet the definition of conversion under Michigan law." *See, e.g.*, *Dicastal N. Am., Inc. v. Markowitz Metals Grp., LLC*, 633 F. Supp. 3d 999, 1021 (W.D. Mich. 2022).

Count IV will therefore be dismissed.

### ii. Negligent and Innocent Misrepresentation

Although titled "negligent" and "innocent" misrepresentation, the substance of Counts V and VI appear to be that Heat Transfer fraudulently "induce[d] Siser to continue shipping additional product and extending credit." ECF No. 18, PageID.613.[3] As explained, this is a potential exception to the economic loss doctrine. *See Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 209 Mich. App. 365, 371 (1995) ("courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine.").

[3] The court "must look to the four corners of plaintiff's complaint, accept all factual allegations as true, and determine whether the fraud claim falls outside the economic loss doctrine[,]" whatever name the fraud or misrepresentation claims are given. *See GMC v. Alumi-Bunk, Inc.*, No. 270430, 2007 Mich. App. LEXIS 1809, at *26 (Ct. App. July 24, 2007) (Kelly, J., dissenting) (treating claims for negligent and innocent misrepresentation as one for fraudulent inducement), *dissenting opinion adopted in GMC v. Alumi-Bunk, Inc.*, 482 Mich. 1080, 1080 (2008) (reversing "for the reasons stated in the Court of Appeals dissenting opinion").

These counts are each based on an April 11, 2025 email from Anton, which "represented to Siser that Heat Transfer was making weekly payments from available cash, had restructured its operations to increase free cash flow, and was making consistent progress in reducing its past-due balance, thereby conveying that Heat Transfer had sufficient liquidity and operational viability to support continued shipments on credit." *Id.* at PageID.611. First, the court notes that the alleged factual basis of this claim cuts off any fraudulent inducement claim that arises prior to Heat Transfer's April 11, 2025 communication, and the approximately $500,000 in product that Siser alleges it would not have shipped absent Defendants' misrepresentations *See id.* at PageID.612. That is, Plaintiff only alleges sufficient facts to show fraud in the inducement as to $500,000 shipped after that April 2025 email; it cannot maintain a claim for fraud in the inducement as to any prior product shipped under the facts it relies on. *See* ECF No. 18, PageID.614-15 (same allegation as to negligent misrepresentation).

The claims accordingly narrowed, the court focuses on that particular point. As to this claim, Defendant argues that the fraud

allegations are not plausibly pleaded because (1) the emails "merely described Heat Transfer['s] then-existing assessment of its financial condition," (2) that the statements only concern "future performance and intentions," which do not support a fraud claim, and (3) the fraudulent statements are not pleaded with the requisite particularity. ECF No. 31, PageID.969-70. But the first point is just a competing interpretation of the truth of the assertions made in the email; Plaintiff pleaded that the statements regarding its financial situation were "false or misleading." ECF No. 18, PageID.600. In this posture, that allegation is plausible and is accepted as true. As for concerning only "future performance," Defendants' email states that "Every single week, we've been putting whatever extra funds we can toward paying this down[,]" and "we've adjusted and streamlined operations to free up more cash week over week." ECF No. 18-2, PageID.807. These statements relate to "an existing or past fact" more than future performance, but in any case, "Michigan courts also recognize that actionable fraudulent inducement can occur when 'a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied

upon.'" *See Llewellyn-Jones v. Metro Prop. Grp., Ltd. Liab. Co.*, 22 F. Supp. 3d 760, 785 (E.D. Mich. 2014). As for the "who, what, when, where, and how" of the alleged misrepresentation, the complaint sufficiently points to these facts by attaching the email itself, and sufficiently explains why those statements were allegedly false or misleading. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citing Fed. R. Civ. P. 9(b)); ECF No. 18, PageID.600 (¶ 18-20).

So the court declines to grant the motion against Counts V and VI. While the allegations may be on the thin side – and Plaintiff will at some point have to explain why it was reasonable of them to deliver an additional $500,000 of product on credit at a time that Defendant owed them over $3 million, of which nearly $1.9 million was more than 120 days past due (ECF No. 18-2, PageID.809)[4] – Plaintiff is entitled to discovery regarding Defendant's financial situation at the time they made the statements in April 2025, in order to ascertain whether those statements were false or actionably misleading.

[4] "[J]ustifiable and detrimental reliance is an essential element of negligent misrepresentation under Michigan law." *Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512, 517 (6th Cir. 2015).

### C. Declaratory Judgment for Piercing the Corporate Veil (Count VII)

Defendants argue that the last claim, for piercing the corporate veil, should be dismissed because veil-piercing is not itself a cause of action. ECF No. 23, PageID.887 (collecting cases). Defendants also argue that the allegations are insufficient to support veil-piercing. Plaintiff apparently concedes that veil-piercing is not an independent cause of action, and so recasts it as a request for "declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 regarding whether Heat Transfer operated as Anton's alter ego and whether Anton may be held personally liable for the obligations and wrongful conduct alleged throughout the Complaint."

This court has said before that "Michigan courts have repeatedly held that piercing the corporate veil is an equitable remedy, not an independent cause of action." *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-11310, 2024 LX 199739, at *15-16 (E.D. Mich. Oct. 16, 2024) (citing *Thomas v. Khrawesh*, 272 F. Supp. 3d 995, 1000 (E.D. Mich. 2017), *Gallagher v. Persha*, 315 Mich. App. 647, 662, 891 N.W.2d 505 (2016)). Plaintiff cannot evade that fact by the

fiction that its claim is one for "declaratory" relief – Plaintiff improperly seeks to impose liability on a veil-piercing claim prior to a judgment against the corporate entity. *See Gallagher*, 315 Mich. App. at 662 ("[A] party certainly needs to successfully pursue a cause of action before it can pursue a remedy . . . ."). So this count must be dismissed.

Defendant Anton is not named in Count I. But he is named in Counts V and VI. And the court therefore addresses the remaining claims against Anton, and agrees that the allegations in the complaint fail to state a claim for alter ego liability or veil-piercing in any event. As far as the claims in Counts V and VI are intended as alter ego or veil-piercing allegations, they allege that Anton, in his capacity as Heat Transfer's president, "personally made" the representations alleged about Heat Transfer's financial condition (ECF No. 18, PageID.613), "personally directed or authorized Heat Transfer's retention, use, sale, transfer, and disposition of Siser-supplied inventory" (*id.* at PageID.601), and, for example, "personally participated in and directed the conversion described above by causing Heat Transfer to continue ordering and accepting Siser's products while leaving Siser unpaid" (*id.* at PageID.609). There are more allegations of this kind, but all follow

the same pattern. The trouble is that there are no nonconclusory allegations that Anton ever acted outside of his corporate capacity. Plaintiff tries, to be sure: “Anton did not merely act in a corporate capacity, but personally participated in and directed the disposition of Siser’s product and/or its proceeds, including by authorizing or permitting the sale or use of that product and the diversion of resulting proceeds for purposes other than payment to Siser.” ECF No. 18, PageID.610. But the phrase that he did not “act in a corporate capacity” is not entitled to the assumption of truth, because every act described in the later clauses are indisputably corporate functions of Heat Transfer.[5]

“Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss.” *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir.

[5] To the extent that Plaintiff’s counsel argued that Anton has used Siser’s product to set up new companies, these allegations are not in the second amended complaint, cannot be considered, and the court will not offer leave to amend a third time in this posture.

2008) (citing *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457 (1995)). To determine whether the corporate entity was a "mere instrumentality" of an individual, courts consider, for example: whether the corporation is undercapitalized; whether separate books are kept; whether there are separate finances for the corporation; whether the corporation is used for fraud or illegality; whether corporate formalities have been followed; and whether the corporation is a sham. *See GM Glob. Tech. Operations, LLC v. Quality Collision Parts, Inc.*, No. 23-13026, 2026 U.S. Dist. LEXIS 14138, 2026 LX 87510, at *40 (E.D. Mich. Jan. 26, 2026); *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 716 (2014). Michigan courts have also considered the commingling of funds and the extent to which the shareholder controlled the decisions of the entity. *See Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 277 (W.D. Mich. 2017) (citations omitted). Nowhere in Siser's complaint do they allege that Anton diverted the funds to himself or commingled corporate funds with his personal funds. Siser's complaint does not allege whether there were separate books or finances. The allegation that Anton "exercised complete domination and control over Heat Transfer's business operations, finances, purchasing decisions, vendor

relationships, and payment decisions" as its president and chief officer (ECF No. 18, PageID.617) does not compel the conclusion that the corporate form was not respected.

To be sure, the Complaint does say: "Upon information and belief, Anton disregarded corporate formalities, including but not limited to failing to maintain separateness between his personal affairs and the affairs of Heat Transfer." ECF No. 18, PageID.619. Although all of the details regarding a defendant's failure to respect the corporate form may not be necessarily known to a plaintiff prior to discovery, to open the doors of discovery, allegations "on information and belief" must still be supported by enough facts to support the inference of abuse of the corporate form. *See Smith v. General Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) ("[C]omplaints grounding claims on 'information and belief' can survive a motion to dismiss" if they "'set forth a factual basis for such belief[.]'") (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006)); *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n. 10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual

allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged."); *Alsbrook v. Concorde Career Colls.*, 469 F. Supp. 3d 805, 846 (W.D. Tenn. 2020) ("[I]nformation-and-belief pleading typically will not satisfy *Twombly* and *Iqbal*'s requirement that a complaint plead enough factual matter to raise a plausible inference of wrongdoing.") (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (cleaned up)). In light of the factual content of every other allegation, and given that no other allegation suggests that Heat Transfer is a "mere instrumentality" of Anton, this allegation is conclusory and is insufficient to carry the alter ego/veil-piercing allegations into the realm of plausibility. *Iqbal*, 556 U.S. at 677.

Plaintiff avoids complete dismissal of the claims against Anton, however, because in pleading these other counts against Kirk Anton, Siser intended also to bring tort claims directly against Anton. Plaintiff argues that these claims are not barred because "[t]he law plainly permits personal liability for a corporate officer's own tortious conduct, even if undertaken on behalf of a corporation." ECF No. 26, PageID.924 (citing *Lifeline Ltd. No. II v. Conn. Gen. Life Ins. Co.*, 821 F. Supp. 1201,

1213 (E.D. Mich. 1993); *In re Interstate Agency*, 760 F.2d 121, 125 (6th Cir. 1985); *Livonia Bldg. Materials Co. v. Harrison Const. Co.*, 276 Mich. App. 514, 519 (2007)).

It is true that "regardless of the corporate form, officers remain personally liable for their intentional and criminal conduct." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 18 (2010) (applying this concept to a conversion claim). "It is of no consequence whether they acted for the corporation or acted for themselves[, i]f they were active participants in" the tortious conduct." *Id.* (citation omitted); *Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l.*, No. 16-cv-13168, 2017 U.S. Dist. LEXIS 130395, at *31 (E.D. Mich. Aug. 16, 2017) ("It is well established under Michigan law that, without regard to the doctrine of piercing the corporate veil, corporate officers and agents are personally liable for torts that they personally commit."). Still, a plaintiff "cannot avoid the economic loss doctrine merely by suing [a defendant] in his personal capacity." *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 382 (6th Cir. 2015). If a claim against the corporation is covered by that doctrine, pleading that same claim against a corporate officer cannot rescue it. *See id.* (no Michigan authority that this principle of tort liability trumps

the economic loss doctrine). The conversion claim is barred by the economic loss doctrine against Heat Transfer; it is equally barred against Anton. But because the misrepresentation claims remain, those too may proceed against Anton; the complaint sufficiently sets out Anton's own participation in that alleged misrepresentation.[6]

Count VII is therefore dismissed, and Counts II-IV as brought against Anton are also dismissed for the reasons explained.

## V. CONCLUSION

Therefore, the court **GRANTS** the motion to dismiss **IN PART** as to Counts II, III, IV, and VII against both Defendants. Counts V and VI may proceed to discovery along with Count I.

**SO ORDERED**.

Date: August 21, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge

[6] Again, although titled "negligent" and "innocent" misrepresentation, the factual allegations of the complaint say that Anton made these statements "knowingly and with the intent to induce" Siser to supply additional product. ECF No. 18, PageID.600. So the court treats these claims as sufficiently alleging intentional and actionable conduct.